**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF GEORGIA**
**ATLANTA DIVISION**

| | |
|---|---|
| ALISON WHITE, HELENA MAY, and CHRISHUNDA BENNETT, | ) ) |
| | ) **Civil Action File No.** |
| Plaintiffs, | ) |
| | ) |
| v. | ) |
| | ) **JURY TRIAL REQUESTED** |
| INNOVATIVE WOMEN'S HEALTHCARE SOLUTIONS and MICHAEL THRASHER, individually, | ) ) ) |
| | ) |
| Defendants. | ) |

## COMPLAINT

Plaintiffs Alison White, Helena May, and Chrishunda Bennett (collectively

"Plaintiffs") bring this Complaint against Innovative Women's Healthcare Solutions

("IWHS") and Michael Thrasher ("Defendants"), showing as follows:

## INTRODUCTION

1.     This is an egregious case of sexual harassment and sexually hostile

work environment under Title VII of the Civil Rights Act of 1964, as amended, 42

U.S.C. § 2000e *et seq.* ("Title VII"). Defendant Michael Thrasher, IWHS office

manager and husband of IWHS' practice owner, Dr. Melinda Miller-Thrasher,

subjected Plaintiffs to repeated lewd, sexual comments and unwanted physical

touching throughout their employment with the company. Plaintiffs have repeatedly rejected Mr. Thrasher's advances, but he refused to stop. Although Plaintiff Alison White reported Mr. Thrasher's sexual harassment against her to IWHS's Human Resources Manager, Janet Handy, Ms. Handy failed to take remedial action. Ultimately, Plaintiffs were constructively discharged from their employment with IWHS because Defendants created an intolerable working environment.

2.      Defendants are also liable to Plaintiffs under various tort causes of action under Georgia law.

## JURISDICTION AND VENUE

3.      Plaintiffs' Title VII claim presents federal questions over which this court has jurisdiction pursuant to 28 U.S.C. § 1331 (federal question) and 28 U.S.C. § 1343 (civil rights). The Court also has supplemental jurisdiction over Plaintiffs' state law claims under 28 U.S.C. § 1367.

4.      Venue is proper in this District under 28 U.S.C. § 1391(b) and (c) because the unlawful actions and practices occurred in this District.

## EXHAUSTION OF ADMINISTRATIVE REMEDIES

5.      Plaintiffs have satisfied all administrative prerequisites to perfect their claims under Title VII. Specifically, Plaintiffs each timely filed a Charge of

Discrimination with the Equal Employment Opportunity Commission ("EEOC"), and the EEOC issued a notice of right to sue.

6.     Plaintiffs bring this suit within ninety (90) days of receipt of their notices of right to sue.

## THE PARTIES

7.     Plaintiffs are citizens of the United States and residents of the state of Georgia.

8.     Defendant IWHS is medical practice run by a solo practitioner, Dr. Melinda Miller-Thrasher.  It offers OBGYN services and cosmetic surgeries. It has two offices, one in Atlanta, Georgia, and the other in Smyrna, Georgia.

9.     Defendant IWHS is a domestic limited liability company doing business in Georgia.

10.     Dr. Miller-Thrasher is the sole member/manager of Defendant IWHS.

11.     Defendant IWHS is wholly owned by Dr. Miller-Thrasher.

12.     Defendant IWHS employed Plaintiffs within the meaning of Title VII, 42 U.S.C. § 2000e(f).

13.     Defendant IWHS may be served with a summons and copy of the Complaint in this action by delivering a copy of the of Summons and Complaint to

3

its registered agent for service of process, Dr. Melinda Miller-Thrasher, 3200 Highlands Parkway, Suite 420, Smyrna, GA 30082.

14.    Defendant Michael Thrasher is the husband of Dr. Melinda Miller-Thrasher. He is IWHS's office manager and deals with human resources matters.

15.    Defendant Thrasher is a citizen of the United States and a resident of the state of Georgia. He is being sued in his individual capacity and may be served with process by personal service at his residence.

16.    At all relevant times, Defendant Thrasher was acting in the course and scope of his employment with Defendant IWHS, making Defendant IWHS vicariously liable for the actions of Defendant Thrasher under a theory of *respondeat superior*.

## **FACTUAL BACKGROUND**

### *Michael Thrasher's Sexual Harassment of Ms. White*

17.    Ms. Alison White began her employment with IWHS in March 2020. She was jointly employed by IWHS and LabCorp as a phlebotomist.

18.    Beginning in approximately June 2020, Mr. Thrasher subjected Ms. White to ongoing severe and pervasive verbal and physical sexual harassment.

19.    The sexual harassment began when Ms. White participated in training at IWHS. Mr. Thrasher followed her to her car and knocked on her window. Mr.

Thrasher looked around before saying, "I was trying to find out who that fine motherfucker was. It was you. You look good." He also remarked that she was "sexy as hell." Ms. White told Mr. Thrasher that she did not want to receive such comments.

20.    Thereafter, however, Ms. White suffered Mr. Thrasher's verbal harassment nearly every day she saw him in the workplace. He made sexual comments regarding Ms. White's appearance such as, "You look good"; "I like your hair"; and made sexual comments regarding the size of his penis such as, "I have to go to the bathroom. Do you want to come and help me? Because it's a lot to handle."

21.    Mr. Thrasher also encouraged Ms. White to return to work when the office was closed so that they could be alone together.  He also offered to give her money so that they could get a hotel, presumably for the purpose of engaging in sexual activity.

22.    In addition, Mr. Thrasher also made explicit statements regarding Ms. White's vagina and his intention to "come for" or "get" Ms. White's "pussy." For example, Mr. Thrasher once told Ms. White, "Once I break free from the 'jail' [i.e., from his wife, Dr. Miller-Thrasher], I'm going to come for that pussy."

23.    Mr. Thrasher also repeatedly told Ms. White that he wanted to pull her ponytail in a context which implied that he wished to do so for sexual gratification.

On one occasion, Mr. Thrasher committed a battery against Ms. White by physically pulling her ponytail without her consent. When so doing, he said, "I'm going to come for that pussy," and "See, that's what I'm talking about, I like that."

24.     Still, Mr. Thrasher's physical sexual harassment and battery against Ms. White was not limited to this incident. For example, on two occasions, Mr. Thrasher touched Ms. White's thighs without her consent while discussing pulling her ponytail. He would often grab Ms. White's sides, bump and brush against her, and press up against her. He said things like, "You are fine as hell," while brushing past her body in the workplace.

25.     Ms. White was required to draw Mr. Thrasher's blood on multiple occasions when he needed lab work done. Once, she called in a nurse practitioner to draw Mr. Thrasher's blood in her place because Mr. Thrasher made inappropriate comments and sexual advances on Ms. White during the procedure.

26.     In October 2020, Mr. Thrasher called Ms. White's personal phone two separate times during non-work hours and subjected her to further inappropriate comments. He began one of those calls by asking Ms. White if anybody could hear her, then said, "That's the way it need to be, just me and you." After briefly discussing office matters as a pretext for the phone conversation, Mr. Thrasher

asked, "You still got that ponytail on?" and said, "I'm going to swing on that ponytail."

27.    Ms. White repeatedly rejected Mr. Thrasher's harassment, to no avail. On November 9, 2020, she reported this sexual harassment to Janet Handy, who serves in a human resources role at the practice. Ms. Handy responded that it was her word against Mr. Thrasher's. She failed to conduct any investigation or take any remedial action.

28.    On or about November 18, 2020, Ms. White was constructively discharged from her employment with IWHS because Defendants created working conditions so intolerable because of Mr. Thrasher's severe and pervasive sexual harassment that a reasonable person in Ms. White's position would feel forced to resign.

### *Michael Thrasher's Sexual Harassment of Ms. May*

29.    Ms. Helena May began her employment with IWHS in February 2020 as a patient care coordinator. About three months later, Ms. May was promoted to administrative assistant.

30.    Ms. May reported directly to Mr. Thrasher.

31.    Dr. Miller-Thrasher and Janet Handy directed Ms. May that her job was to help Mr. Thrasher with anything he needed.

32.     Beginning in March 2020, Mr. Thrasher subjected Ms. May to ongoing severe and pervasive sexual harassment.

33.     Nearly every day that Ms. May saw him in the workplace, Mr. Thrasher made degrading sexual comments about her body. For example, he told her, "You know you've always looked good, but the dress today and your body … You know what you're doing. You know and I like it."  He then winked at her.

34.     During the week of Halloween 2020, Ms. May dressed up as a witch. When Mr. Thrasher saw her costume, he said, "This is good. You know how to show the body. You know exactly what you're doing. Ya' man be a fool not to take you out wearing this. Cast a spell on me and I'd take you out. You know how to show it. Fits you right, you know." Mr. Thrasher then winked at her again.

35.     On or around October 7, 2020, Ms. May was working in the midtown office for IWHS. On that day, Dr. Miller-Thrasher asked Ms. May to retrieve pizza from her husband Mr. Thrasher outside. Ms. May was wearing a skirt and heels. When Mr. Thrasher saw her, he said, "Ooooh, now you know. I see you have a lil' ass back there. I never saw it before, but you got a nice ass. Turn around for me." Ms. May walked away with the pizza, and Mr. Thrasher shouted from the truck, "Yeah, that looks nice. You know you got it." Ms. May told him to stop, but he refused to listen.

36.     Moreover, on at least three occasions, Ms. May observed Mr. Thrasher watching a graphic pornographic video on his computer in his office. On one such occasion, when Ms. May walked into Mr. Thrasher's office on or around May 2020, he did not stop watching the pornography, and instead asked Ms. May to fix a simple issue on his computer (that Mr. Thrasher obviously would have known how to fix himself) while the pornographic video continued to play.  It was obvious from his conduct that Mr. Thrasher wanted Ms. May to know that he was watching the pornographic video, and the incident left Ms. May distressed and disturbed.

37.     On or about November 20, 2020, Ms. May was constructively discharged from her employment with IWHS because Defendants had created working conditions so intolerable because of Mr. Thrasher's severe and pervasive sexual harassment that a reasonable person in Ms. May's position would feel forced to resign.

### *Michael Thrasher's Sexual Harassment of Ms. Bennett*

38.     Ms. Chrishunda Bennett began her employment with IWHS in August 2020 as a medical assistant.

39.     Ms. Bennett worked in the office three times a week and generally saw Mr. Thrasher once or twice a week.

40.     Starting at the end of August 2020, Mr. Thrasher subjected Ms. Bennett to ongoing severe and pervasive sexual harassment.

41.     For example, two weeks into her employment, Ms. Bennett met Mr. Thrasher to pick up her paycheck. Having previously told her that he liked her hair, Mr. Thrasher explained that when he had made that comment, he meant to hint that he was looking at her and that he "want[ed] some," to imply that he wanted to engage in sexual activity with her. Ms. Bennett was shocked by this statement and felt uncomfortable during the interaction.

42.     Mr. Thrasher continued to tell Ms. Bennett that she looked good and that he wanted to "get some" with her throughout her employment.

43.     Mr. Thrasher repeatedly and aggressively suggested that he and Ms. Bennett engage in sexual intercourse. For example, Mr. Thrasher once told Ms. Bennett that he wanted to see her alone. He told her to return to the office when no one else was present. Ms. Bennett left and did not return as Mr. Thrasher had instructed.

44.     Another time, Mr. Thrasher followed Ms. Bennett onto the elevator when she was departing and made the elevator stop at an empty floor. He suggested they get off the elevator together. Ms. Bennett told him she did not want to do so.

Mr. Thrasher responded, "I want to get that thing wet for you. I can do that for you," in a graphic reference to Ms. Bennett's vagina.

45.    On yet another occasion, Mr. Thrasher brought up the subject of a hotel and said he would give Ms. Bennett money so that she could get them a room. Again, Ms. Bennett refused his sexual advances.

46.    In addition, Mr. Thrasher made sexually explicit comments about his penis, such as, "It's a lot to work with. I could do that for you, I can make you feel good."

47.    He also told Ms. Bennett, "I been married to my wife twenty-five years and I love her, but sometimes I want a piece of young pussy and I want to see what yours is like."

48.    Further, Mr. Thrasher committed assault and battery against Ms. Bennet when he brushed up against Ms. Bennett's body and touched her buttocks without her consent. Ms. Bennett told him to stop.

49.    Despite Ms. Bennett's repeated, explicit rejections and her attempts to avoid Mr. Thrasher, he continued to harass Ms. Bennett nearly every time he saw her.

50.    On or about November 23, 2020, Ms. Bennett was constructively discharged from her employment with IWHS because Defendants created working

conditions so intolerable because of Mr. Thrasher's severe and pervasive sexual harassment that a reasonable person in Ms. Bennett's position would feel forced to resign.

### *IWHS Was Aware of Mr. Thrasher's Unlawful Conduct and Took No Action*

51.    At all times relevant to this matter, IWHS knew or should have known of Mr. Thrasher's sexual harassment of Plaintiffs and the existence of a sexually hostile work environment, but failed to take remedial action to prevent or correct the harassment or protect Plaintiffs.

52.    Upon information and belief, IWHS, through its owner, Dr. Melinda Miller-Thrasher, knew that Mr. Thrasher had sexually harassed women other than Plaintiffs in the past, including employees of IWHS.

53.    On or about November 12, 2020 and on November 19, 2020, IWHS was served with correspondence from Plaintiff's counsel by hand delivery which detailed the foregoing allegations of sexual harassment, assault, battery and other unlawful acts by IWHS and Mr. Thrasher.

54.    Nonetheless, IWHS failed to investigate Plaintiffs' claims or take any action to stop Mr. Thrasher's ongoing severe and pervasive sexual harassment of Plaintiffs.

<u>**COUNT I**</u>
<u>**Sexually Hostile Work Environment in Violation of Title VII**</u>
***Against Defendant IWHS***

55.    Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

56.    Plaintiffs were subjected to an ongoing severe and pervasive sexually hostile work environment by Mr. Thrasher, for which Defendant IWHS is liable as a joint employer.

57.    Plaintiffs were subjected to severe and pervasive sexual comments, sexual advances, and sexual assault and battery by Mr. Thrasher, as outlined above.

58.    Plaintiff Alison White reported the sexually hostile work environment to Ms. Handy, but she refused to take any action to address it.

59.    Defendant IWHS failed to exercise reasonable care to prevent and promptly correct the harassing behavior even after Ms. White reported Defendant Thrasher's harassment.

60.    At all relevant times, Defendant Thasher was acting in the course and scope of his employment with Defendant IWHS. Thus, IWHS is vicariously liable for the individual actions of Defendant Thrasher under a theory of *respondeat superior*.

61.     Plaintiffs were each constructively discharged from their employment with IWHS because Defendants created working conditions so intolerable because of Mr. Thrasher's severe and pervasive sexual harassment that a reasonable person in Plaintiffs' positions would feel forced to resign.

62.     Defendant IWHS is liable for the hostile work environment created by Defendant Thrasher which led to a significant change in Plaintiffs' employment statuses when they were constructively discharged.

63.     As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

64.     As a result of Defendants' violations of Title VII, Plaintiffs are entitled to recover any lost economic benefits of their employment, compensatory and punitive damages, and reasonable attorneys' fees and costs, as well as equitable and injunctive relief.

**COUNT II**
**Assault**
*Against all Defendants*

65.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

66.     Defendant Thrasher's sexual misconduct and actions against Plaintiffs as described above constitute assault.

67.     At all relevant times, Defendant Thasher was acting in the course and scope of his employment with Defendant IWHS. Thus, IWHS is vicariously liable for the individual actions of Defendant Thrasher under a theory of *respondeat superior*.

68.     Based on Defendant IWHS's actual and constructive knowledge of Defendants Thrasher's misconduct and IWHS's failure to intercede on Plaintiffs' behalf, IWHS condoned, adopted, and ratified Mr. Thrasher's conduct. Thus, IWHS is also liable for his actions.

69.     As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT III
## Battery
### *Plaintiffs White and Bennett Against all Defendants*

70.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

71.     Defendant Thrasher's conduct and actions alleged herein toward Plaintiffs White and Bennett amounted to the unwanted and offensive touching of Plaintiffs by Defendant Thrasher, constituting a battery.

72.     At all relevant times, Defendant Thrasher was acting in the course and scope of his employment with Defendant IWHS. Thus, IWHS is vicariously liable

for the individual actions of Defendant Thrasher under a theory of *respondeat superior*.

73.   Based on Defendant IWHS's actual and constructive knowledge of Defendants Thrasher's misconduct and IWHS's failure to intercede on Plaintiffs' behalf, IWHS condoned, adopted, and ratified Mr. Thrasher's conduct. Thus, IWHS is also liable for his actions.

74.   As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT IV
## Intentional Infliction of Emotional Distress
### *Against all Defendants*

75.   Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

76.   Defendant Thrasher intentionally, maliciously, wantonly, and in gross and reckless disregard for Plaintiffs' health and safety, engaged in extreme and outrageous conduct when he subjected Plaintiffs to embarrassment, humiliation, degradation, and ridicule by harassing, assaulting, and battering them, thereby causing Plaintiffs to suffer extreme emotional distress, mental anguish, humiliation, and other indignities.

77.     The harassment, assault, battery, and intentional infliction of emotional distress to which Plaintiffs were subjected culminated in their involuntary separation from employment.

78.     At all relevant times, Defendant Thasher was acting in the course and scope of his employment with Defendant IWHS. Thus, IWHS is vicariously liable for the individual actions of Defendant Thrasher under a theory of *respondeat superior*.

79.     Based on Defendant IWHS's actual and constructive knowledge of Defendants Thrasher's misconduct and IWHS's failure to intercede on Plaintiffs' behalf, IWHS condoned, adopted, and ratified Mr. Thrasher's conduct. Thus, IWHS is also liable for his actions.

80.     Defendants willfully and wantonly disregarded Plaintiffs' rights.

81.     Defendants' conduct was objectively malicious, wanton, and wholly incompatible with the standards of society.

82.     As a result of Defendants' unlawful actions, Plaintiffs have suffered emotional distress, inconvenience, humiliation, and other indignities.

## COUNT V
## Negligent Retention and/or Negligent Supervision
### *Against Defendant IWHS*

83.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

84.     Throughout Plaintiffs' employment, Defendant Thrasher regularly and repeatedly subjected Plaintiffs to sexual comments, offensive touching, and other sexual harassment.

85.     Thrasher's incessant sexual harassment, assault, and battery of Plaintiffs created an intimidating, hostile, and offensive working environment for them.

86.     Upon information and belief, Defendant IWHS was aware of Defendant Thrasher's sexual harassment, assault, and battery of Plaintiffs. Yet, Defendant IWHS did not discipline Mr. Thrasher for his unlawful conduct and continued to require Plaintiffs to work with him.

87.     Defendant IWHS failed to take any remedial action toward Mr. Thrasher during Plaintiffs' employment.

88.     Instead, Defendants continued to employ Defendant Thrasher when it actually knew, constructively knew, or in the exercise of reasonable care should have

known, of his prior history of, reputation for, and propensity for sexual harassment directed toward Plaintiffs.

89.     Notwithstanding actual and constructive knowledge of Mr. Thrasher's prior history of, reputation for, and propensity for sexual harassment, Defendant IWHS negligently supervised Mr. Thrasher, failed to intercede on Plaintiffs' behalf, and negligently retained Mr. Thrasher. Thus, it ratified, condoned, and adopted his conduct, making it liable for the negligent supervision and retention of Mr. Thrasher.

### COUNT VI
### Punitive Damages under O.C.G.A. § 51-12-5.1
### *Against all Defendants*

90.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

91.     All of Defendants' unlawful conduct set forth herein was intentional, willful, malicious, and conducted with the deliberate intent to harm Plaintiffs, or was done with reckless disregard for Plaintiffs and their rights.

92.     Accordingly, Defendants are liable to Plaintiffs for punitive damages.

### COUNT VII
### Attorneys' Fees and Costs under O.C.G.A. § 13-6-11
### *Plaintiffs Against all Defendants*

93.     Plaintiffs incorporate by reference paragraphs 1 through 54 of the Complaint as if fully restated herein.

94. By their actions described above, and by their stubborn litigiousness prior to and during this lawsuit, Defendants acted in bad faith, were stubbornly litigious, and put Plaintiffs to unnecessary trouble and expense.

95. Thus, under O.C.G.A. § 13-6-11, Plaintiffs are entitled to recover their attorneys' fees and expenses incurred in prosecuting this action.

**WHEREFORE**, Plaintiffs demand a TRIAL BY JURY and, as follows:

a. A declaratory judgment that Defendants engaged in unlawful employment practices in violation of Title VII and Georgia law;

b. An injunction prohibiting Defendants from engaging in unlawful employment practices in violation of Title VII and Georgia law;

c. An award of back pay, including all lost wages and benefits, and pay increases Plaintiffs would have received absent their constructive discharge and all other benefits of employment reducible to a dollar value;

d. An award of pre-judgment and post-judgment interest as required;

e. Compensatory damages, in an amount to be determined by the enlightened conscience of the jury, for Plaintiffs' emotional distress, suffering, inconvenience, mental anguish, loss of enjoyment of life and special damages;

f.  Punitive damages in an amount to be determined by the enlightened conscience of the jury to be sufficient to punish Defendants for their conduct toward Plaintiffs and deter Defendants from similar conduct in the future;

g.  Reasonable attorneys' fees and costs; and

h.  Other and further relief as the Court deems just and proper.

Respectfully submitted, this 1st day of June, 2021.

**BUCKLEY BEAL LLP**

*/s/ Rachel Berlin Benjamin*
Rachel Berlin Benjamin
Georgia Bar No. 707419
rberlin@buckleybeal.com
*/s/ Ashley Wilson Clark*
Ashley Wilson Clark
Georgia Bar No. 771512
awilsonclark@buckleybeal.com
*/s/ Alessandra T. Palazzolo*
Alessandra T. Palazzolo
Georgia Bar No. 485399
apalazzolo@buckleybeal.com

600 Peachtree Street NE, Suite 3900
Atlanta, GA  30308
Telephone: (404) 781-1100
Facsimile: (404) 781-1101

*Counsel for Plaintiffs*